JOEL D. RHODES,
        Petitioner,

v.                                    Case No. 13-C-0161

MICHAEL DITTMANN, Warden,
Columbia Correctional Institution,
        Respondent.

## DECISION AND ORDER

In 2013, Joel Rhodes filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He was convicted in a Wisconsin trial court of one count of kidnapping and one count of aggravated battery. In his petition, Rhodes alleged three grounds for relief: (1) that he did not voluntarily, knowingly, and intelligently waive his Sixth Amendment right to counsel at trial; (2) that even if his waiver was valid, he was denied his right to counsel because he was not allowed to revoke his waiver; and (3) that he was denied his right to counsel when the county jail prevented Rhodes from meeting with a lawyer during the weekend before his trial commenced. In a prior order, I granted Rhodes's petition on the second ground. *See Rhodes v. Meisner*, 7 F. Supp. 3d 880 (E.D. Wis. 2014). The Seventh Circuit reversed. *See Rhodes v. Dittmann*, 783 F.3d 669 (7th Cir. 2015). Following remand, the parties filed supplemental briefs on the waiver and jail-access grounds. I consider those grounds in this order.

## I. BACKGROUND

In 2002, Rhodes was charged with two counts of kidnapping. He retained Attorney Peter Kovac as trial counsel. A jury acquitted Rhodes of one of the kidnapping

charges, but a different jury convicted him of the other. When he appealed the conviction, Rhodes argued, among other things, that Kovac had been ineffective. However, the court of appeals did not reach this issue because the state conceded that Rhodes's conviction had to be vacated on other grounds. The case was remanded for a new trial.

On remand, the state public defender appointed Richard Kaiser to represent Rhodes, and the state filed an amended information to add an aggravated battery charge to the remaining kidnapping charge. The trial of both charges was scheduled to begin on Monday, May 7, 2007.

On March 13, 2007, Attorney Kaiser filed a motion on behalf of Rhodes requesting permission for Rhodes to represent himself. In the motion, Kaiser stated that, on March 9, 2007, Rhodes informed him that he wished "to assume personal representation in this case for the remainder of the proceedings, including conducting his own jury trial." ECF No. 18-1 at 1. Kaiser stated that Rhodes

> voiced a distinct lack of faith in defense counsel's judgment relating to some of the more recent trial strategy decisions made. He likewise voiced a lack of trust, going so far as to suggest that counsel may have shared confidential information with the State concerning defense decisions which in turn prompted the State to add additional witnesses for trial. Mr. Rhodes stated that he no longer trusted counsel and did not wish him to be further involved in the defense of his case.

*Id.* at 1–2. Kaiser also stated that Rhodes's "stated preference for representing himself is not a completely new development," and that "statements by Rhodes over the past several months indicated that he was at least thinking about making such a request at various times during this representation." *Id.* at 2. After setting forth his belief that Rhodes was competent to represent himself and that his waiver was being made

2

voluntarily and intelligently, Kaiser stated that Rhodes "indicates he will be ready to try the case on [May 7, 2007] and is seeking no adjournments." *Id.* at 4.

On April 2, 2007, the court held a hearing on Rhodes's motion to represent himself. The court began the hearing by asking Rhodes why he wanted to represent himself. Rhodes said that he just felt like he could represent himself better than Attorney Kaiser could. ECF No. 16-1 at 2. Rhodes also said that he felt that Kaiser was too "passive" and "friendly" with the prosecutor. *Id.* at 3–4. The court then turned to Kaiser, and Kaiser described some of the events that he thought caused Rhodes to want to represent himself. Eventually, the court decided that it had not heard enough to allow Kaiser to withdraw and to allow Rhodes to represent himself. *Id.* at 16. It adjourned the hearing until April 6 and stated that, in the interim, the court expected Kaiser and Rhodes to attempt to resolve their differences. *Id.* at 17. The court also warned Rhodes about the risks of self-representation, including that he was not "schooled in the rules of evidence" and therefore would not know how to present evidence, how to ask questions, and how to cross-examine witnesses. *Id.* at 18.

When the hearing resumed on April 6, Kaiser informed the court that Rhodes still wished to represent himself. The court then engaged in an extensive exchange with Rhodes about his decision to waive his right to counsel. The court made sure that Rhodes understood the risks and difficulties of self-representation, as well as the benefits of counsel. The court also advised Rhodes that even if he and Kaiser could not get along, he had a right to ask for new appointed counsel, which the court would allow "if it was appropriate." ECF No. 14 at 12. The court asked Rhodes whether, despite of this, he still wished to represent himself, and Rhodes said he did. The court also

3

advised Rhodes that, if he could afford it, he had the right retain his own counsel. Rhodes said that he understood. The court also questioned Rhodes about his knowledge of the rules of evidence and whether he had ever been treated for a mental disease or defect. Rhodes said that he did "not yet" know anything about the rules of evidence, and that although he had been taken to a mental-health facility and evaluated by a psychologist, he had never been diagnosed with a mental disease or defect or received treatment for one. *Id.* at 15–16. As the colloquy continued, Rhodes repeatedly affirmed that he understood his right to either appointed or retained counsel and the risks of self-representation but preferred to represent himself.

Towards the end of the colloquy, the court handed Rhodes a written waiver form and instructed him to go over it with Attorney Kaiser. At this point, Rhodes interjected: "Judge, I want to say one more thing. I was in the process of hiring Attorney Kovac but I don't know what happened, he here in the courtroom today." ECF No. 14 at 23. When the court asked Rhodes what he meant by that, Rhodes responded: "I don't know if he taking the case or not. I don't know if he—I don't know if he's taking the case." *Id.* at 23. The court then turned to Attorney Kovac, who was present in court and had also attended the April 2 hearing.

Kovac informed the court that Rhodes had asked him to attend the hearings, and that Rhodes had expressed interest in retaining Kovac as trial counsel. Kovac said that he told Rhodes that he had two concerns, the least important of which was "financial." ECF No. 14 at 25. His other concern was lack of preparation, and Kovac said that he told Rhodes that he could not "be fairly prepared to try the case on May 7th." *Id.* at 26. The court then asked Kovac whether he had been retained in this case, and Kovac said

4

no. He added that he believed Rhodes would be able to resolve the financial concern, but that his inability to be prepared for trial precluded him from accepting the representation.

By this point, Rhodes had completed and signed the written waiver form and returned it to the court. The court then again admonished Rhodes about the difficulties he would face trying the case without a lawyer:

> THE COURT: Now, you're a layperson and you understand the difficulty that it is in trying a case and particularly in representing yourself.
>
> RHODES: Yes, sir.
>
> THE COURT: Now, you understand I can't be an attorney for you and I can't give you any legal advice, nor can the district attorney.
>
> RHODES: Yes.
>
> THE COURT: And we won't be taking the time to explain the court procedures to you; do you understand that?
>
> RHODES: Yes.
>
> THE COURT: All right. Again, you still wish to represent yourself?
>
> RHODES: Yes.
>
> THE COURT: And again for what reason is it that you wish to represent yourself?
>
> RHODES: Because I think that I can better defend myself in this case.

ECF No. 14 at 28–29. At this point, the court concluded that Rhodes was competent to represent himself and that he had voluntarily, knowingly, and intelligently waived his

5

right to counsel. The court granted Rhodes's motion to proceed without counsel and allowed Attorney Kaiser to withdraw.

As he prepared to represent himself at the May 7 trial, Rhodes decided to pay Attorney Kovac for legal advice. During the weeks before the trial, Kovac met regularly with Rhodes at the Milwaukee County Jail. Kovac also planned to meet with Rhodes during the weekend before the trial to advise Rhodes on how to handle motions in limine, jury voir dire, opening statements, objections, and cross-examination of the state's witnesses. However, when Kovac arrived at the jail to meet with Rhodes the weekend before trial, the jail (which is operated by the Milwaukee County Sheriff's Department) informed Kovac that because he was not Rhodes's counsel of record, he would not be allowed "contact" visits with Rhodes. ECF No. 6-4 at 19. Instead, Kovac was allowed only brief teleconferences with Rhodes, similar to those allowed to the general public, which were generally of short duration and without the privacy of normal attorney-client visits. *Id.*

In a letter dated May 6, 2007 and filed May 7, 2007, Kovac informed the court that jail staff had precluded him from seeing Rhodes over the weekend. In addition, on the morning of May 7, before the trial began, Rhodes informed the trial court that he had paid Kovac for advice and had been meeting with Kovac, but that the jail had recently prohibited him from meeting with Kovac. In response, the trial judge indicated that he was unaware of the jail's actions, that he thought Rhodes had a right to meet with Kovac even though he was not counsel of record, and that he would instruct his bailiffs to find out what was going on and make sure that Rhodes was able to meet with Kovac

6

at the jail. ECF No. 16-1 at 44–45. The trial court also allowed Kovac to meet with Rhodes during breaks in the trial. ECF No. 6-4 at 50.

The jury convicted Rhodes on both the kidnapping and aggravated battery charges. On appeal, Rhodes argued that his waiver of the right to counsel was not valid, that the trial court should have allowed him to revoke his right to counsel, and that the jail's limiting his access to Kovac during the weekend before trial deprived him of his right to counsel. The court of appeals rejected these arguments. *See State v. Rhodes*, 337 Wis. 2d 594 (Ct. App. 2011). Rhodes sought relief in the Wisconsin Supreme Court, but that court denied his petition for review. As noted, I previously granted the writ on the ground that the trial court should have allowed Rhodes to revoke his waiver of the right to counsel, but the Seventh Circuit reversed. Rhodes now seeks relief on the remaining grounds.

## II. DISCUSSION

### A. Waiver of Right to Counsel

Rhodes first argues that he did not voluntarily, knowingly, and intelligently waive his Sixth Amendment right to counsel at trial. Because the Wisconsin Court of Appeals adjudicated this claim on the merits, I may grant relief only if the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

When the court of appeals addressed this claim, it understood Rhodes to be arguing that he did not make a "deliberate choice" to proceed without counsel because

7

the trial court accepted his waiver and discharged Attorney Kaiser "without sufficiently exploring Rhodes's wish to hire Attorney Kovac." *State v. Rhodes*, 337 Wis. 2d at 603. The court rejected this argument. It first noted that the colloquy that the trial court conducted with Rhodes before accepting his waiver was "exemplary," *id.* at 604, and that the record fully supported the trial court's conclusion that Rhodes made a deliberate choice to proceed *pro se*, *id.* at 605–06. The court then rejected Rhodes's argument that the trial court should have conducted a more extensive inquiry about his discussions with Attorney Kovac before concluding that Rhodes made a deliberate choice to represent himself. *Id.* The court reasoned:

> [A]lthough Rhodes mentioned the possibility of hiring Attorney Kovac during the waiver colloquy, Attorney Kovac immediately disclosed that he had not been retained and that he was not willing to be retained for a trial starting on May 7, 2007. Rhodes, however, expressly disavowed any wish for an adjournment when moving to proceed *pro se*. Thus, retaining Attorney Kovac simply was not a viable option. Moreover, after the trial court questioned Attorney Kovac on the record, Rhodes stated that he wanted to proceed *pro se* because he thought he could "better represent himself." The record unequivocally reflects that Rhodes knowingly, intelligently, and voluntarily waived the right to counsel.

*Id.* at 606

In the present case, Rhodes argues that the court of appeals's conclusion that Rhodes voluntarily and intelligently waived his right to counsel involved an unreasonable application of various Supreme Court cases governing waiver of the right to counsel. *See, e.g.*, *Brewer v. Williams*, 430 U.S. 387 (1977); *Faretta v. California*, 422 U.S. 806 (1975); *Von Moltke v. Gillies*, 332 U.S. 708 (1948). Rhodes stresses that the Supreme Court has held that "courts indulge every reasonable presumption against waiver," *e.g.*, *Brewer*, 430 U.S. at 404, and that a trial judge, before accepting a waiver,

8

"must investigate as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke*, 332 U.S. at 723–24. Rhodes argues that the court of appeals's decision resulted in an unreasonable application of these principles because it affirmed the trial court's acceptance of the waiver without adequately considering how Rhodes's mentioning his desire to retain Kovac affected the voluntariness of the waiver.

I cannot find that the court of appeals's conclusion that the trial court conducted an adequate inquiry into Rhodes's desire to hire Kovac before accepting his waiver involved an unreasonable application of the principles Rhodes cites. In his motion to represent himself and in his colloquy with the trial judge, Rhodes made clear that his waiver was voluntary. Rhodes stated that he had been thinking about representing himself for some time, that he had discussed his choice with family members and attorneys, that he had not been threatened or promised anything to induce him to waive his right to counsel, and that he made the decision of his own free will. Although Rhodes's mentioning a desire to hire Kovac introduced the possibility that Rhodes wished to retain Kovac rather than proceed *pro se*, the trial court addressed that possibility by questioning Kovac and confirming that he had not accepted the representation and would not do so because he could not be prepared for trial by May 7. Rhodes heard this exchange between the trial judge and Kovac and thus was well aware that Kovac had not accepted the representation and could not do so because of lack of preparation time. After hearing Kovac's response, Rhodes continued to engage in the waiver colloquy with the court and assured the court that he still wished to represent himself. Rhodes did not ask the trial court to postpone the trial date so that Kovac could prepare and Rhodes could resolve any remaining issues that might prevent

9

Kovac from accepting the representation. Based on this sequence of events, the Wisconsin Court of Appeals could reasonably conclude that Rhodes's waiver of his right to counsel was unequivocal and voluntary.

Rhodes argues that, in light of Kovac's statement that he could not be prepared for trial by May 7, the trial judge had an obligation to ask Rhodes whether he wanted to request an adjournment of the trial rather than proceed *pro se*. However, Rhodes cites no case—from the Supreme Court or any other court—indicating that, before accepting a waiver of the right to counsel, a trial judge must, *sua sponte*, suggest adjourning a trial date to accommodate a potential substitution of counsel. Moreover, Rhodes, who stated during the waiver colloquy that he had been involved in several criminal trials, was no doubt aware that he could have requested an adjournment of the trial date if that was his preferred course of action.[1] Indeed, in the motion to proceed *pro se* filed by Attorney Kaiser, Rhodes stated that he was "seeking no adjournments," which implies that he knew that he could have requested one if he wanted to. Under these circumstances, I cannot say that it was unreasonable for the court of appeals to conclude that the trial court conducted an adequate inquiry into Rhodes's desire to hire Kovac before accepting his waiver of his right to counsel.

In his reply brief, Rhodes contends that this case is similar to *Pazden v. Maurer*, in which the Third Circuit granted a writ of habeas corpus after finding that the petitioner

---

[1] Whether the trial court would have granted an adjournment if Rhodes had requested one is a different matter. However, because Rhodes did not request an adjournment, I need not explore whether the trial court would have violated his rights if it refused to adjourn the trial. *See Carlson v. Jess*, 526 F.3d 1018, 1024–28 (7th Cir. 2008) (holding that court's refusing to adjourn trial date to facilitate substitution of counsel violated defendant's constitutional rights).

10

did not voluntarily waive his right to counsel. 424 F.3d 303 (3d Cir. 2005). In that case, the petitioner was appointed new counsel just before the trial was set to begin. The newly appointed counsel then informed the court that, for various reasons, she could not be prepared to try the case on the scheduled trial date and requested an adjournment. The court denied the request. At this point, the petitioner informed the court that he wanted to represent himself rather than proceed to trial with counsel who was admittedly unprepared. During the ensuing waiver colloquy, the petitioner made clear that he was "selecting the lesser of two evils" and that he would have preferred to continue being represented by appointed counsel had the court granted her request for an adjournment. *Id.* at 308–09. Despite this, the trial court accepted the waiver and allowed the petitioner to represent himself at trial. The state appellate court affirmed the trial court's acceptance of the waiver. However, the Third Circuit concluded that these decisions were "contrary to" the Supreme Court's admonition that courts must indulge every reasonable presumption against waiver of the right to counsel. *Id.* at 318 (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)). The Third Circuit reasoned that the petitioner's decision to proceed without counsel was not the product of his free will but was instead compelled by the trial court's refusal to grant his appointed counsel an adjournment. *Id.* at 316–19. According to the Third Circuit, the trial court's "denial of [appointed counsel's] request for a three-month adjournment forced [the petitioner] to choose between the lesser of two evils, effectively leaving him with no choice in the matter at all." *Id.* at 317. The Third Circuit concluded that, for this reason, the petitioner's waiver of counsel was not voluntary in the constitutional sense. *Id.* at 319.

11

*Pazden* is distinguishable from the present case. Unlike the petitioner in that case, Rhodes was not forced to choose between proceeding to trial with counsel who was unprepared (or otherwise unacceptable) and representing himself. Although Rhodes had expressed dissatisfaction with Kaiser, Rhodes did not say anything to the trial court that suggested he was choosing to proceed *pro se* solely to avoid having Kaiser as his trial counsel. Rather, Rhodes indicated that he had been thinking about representing himself for some time and that he had decided to do so only after giving the matter careful thought. During the waiver colloquy, the trial court confirmed that Rhodes understood that if he had a problem with Kaiser, he could request substitute counsel, and that if he did so the court and the public defender would consider appointing substitute counsel. *See* ECF No. 14 at 12. Rhodes said that he understood that he could request substitute counsel rather than proceed to trial with Kaiser but preferred to represent himself. Moreover, unlike the petitioner in *Pazden*, Rhodes did not express a preference for an adjournment over proceeding *pro se*. In short, unlike in *Pazden*, here the trial court did not force Rhodes to choose between the lesser of two evils. Thus, *Pazden* does not suggest that the Wisconsin Court of Appeals acted unreasonably in concluding that Rhodes's waiver of his right to counsel was voluntary.

Rhodes also contends that the Wisconsin Court of Appeals's adjudication of this claim is not entitled to deference under 28 U.S.C. § 2254(d) because it was based on an unreasonable determination of the facts in light of the evidence presented in state court. Rhodes argues that the court made three unreasonable factual determinations. First, he contends that the court unreasonably determined that he "expressly disavowed any wish for an adjournment when moving to proceed *pro se*." *State v. Rhodes*, 337

12

Wis. 2d at 606. However, this factual determination was clearly accurate: in his motion to proceed *pro se*, Rhodes stated that he would be ready for the May 7 trial date and that he was "seeking no adjournments." ECF No. 18-1 at 4. Rhodes points out that this statement was made weeks before the hearing at which the trial court granted the motion and that it did not preclude him from later changing his mind and requesting an adjournment. However, these points go to the legal significance of the court's factual determination rather than its accuracy. They do not change the fact that Rhodes actually disavowed any wish for an adjournment when he moved to proceed *pro se*. Therefore, the court's determination that he did disavow a wish for an adjournment at that time was not unreasonable.

Second, Rhodes contends that the court of appeals unreasonably determined that he had never been treated for a mental illness. Initially, I note that the court did not expressly find that Rhodes had never been treated for a mental illness; rather, it stated that Rhodes *told the trial court* that he had never been treated for a mental illness. And that factual determination was accurate. Although Rhodes mentioned that he was once "checked into a mental hospital," he also stated that he was there for only 20 hours and was merely evaluated for a mental illness. ECF No. 14 at 15–16. After Rhodes gave this answer, the trial court asked him whether he had ever been diagnosed with a mental disease or defect, and Rhodes said no. The court then asked whether Rhodes had ever been treated by a psychiatrist or a psychologist for a mental disease, and again Rhodes said no. Thus, while Rhodes's answers during the colloquy established that he had been *evaluated* for a mental disease or defect, they also established that he had never been *treated* for a mental disease or defect. The court of appeals's

determination that Rhodes told the trial court that he had never been treated for a mental illness was therefore not unreasonable.[2]

Third, Rhodes contends that because he told the trial court that he did "not yet" know anything about the rules of evidence, ECF No. 14 at 15, the court of appeals unreasonably determined that he understood the proceedings and the disadvantages of self-representation.  Rhodes argues that once he informed the trial court that he did not know anything about the rules of evidence, the court should have informed him that the rules of evidence "establish the ground rules by which the trial is conducted" so that Rhodes had a better understanding of "the practical consequences of not knowing the rules of evidence."  Supp. Br. at 12, ECF No. 42.  However, the trial court in fact advised Rhodes of the practical consequences of not knowing the rules of evidence.  During the waiver colloquy, the court informed Rhodes that, in examining witnesses and presenting evidence, he would have to "follow the rules of evidence" and that a lawyer would better understand the rules than he would.  ECF No. 14 at 14–15.  Rhodes confirmed that he understood that he would be required to follow the rules of evidence during the trial when, in response to the trial judge's asking Rhodes to identify his role in the trial, Rhodes answered, "To make sure me and the D.A. follow the rules of evidence."  *Id.* at

---

[2] Rhodes also contends that his answers to the trial court's questions about his mental health affected the validity of his waiver of his right to counsel.  He contends that the trial court should have asked him what caused him to be checked into the mental hospital, when that occurred, and what the outcome of the psychological evaluation was.  However, the trial court did follow up on these matters: Rhodes explained that he was taken to the mental institution by a detective who was working on the case before the court so that he "couldn't bail out" and not because he was "crazy."  ECF No. 14 at 15.  Rhodes also identified the outcome of the evaluation by stating that he was not diagnosed with, or treated for, a mental disease or defect.  In short, none of Rhodes's comments on his mental health suggested that he was not competent to waive his right to counsel or that the trial court should have further inquired into the matter.

16. Moreover, a few days earlier, during the initial hearing on Rhodes's motion to proceed *pro se*, the trial court warned Rhodes about the practical consequences of not knowing the rules of evidence as part of a broader statement to Rhodes about the disadvantages of self-representation. *See* ECF No. 16-1 at 18–19. Specifically, the court advised Rhodes that he was "not schooled in the rules of evidence" and therefore did not know "how to present evidence, how to ask questions, how to cross examine witnesses." *Id.* at 18. Thus, there is no merit to Rhodes's claim that the trial court failed to advise him of the practical consequences of not knowing the rules of evidence, including that they established the ground rules for conducting the trial.

For these reasons, Rhodes is not entitled to relief on his claim that he did not voluntarily, knowingly, and intelligently waive his Sixth Amendment right to counsel at trial.

### B. Jail-Access Claim

Rhodes's remaining argument is that he was deprived of his Sixth Amendment right to counsel when the jail denied him "contact" visits with Kovac during the weekend before the trial commenced and instead limited him to brief teleconference visits.

The respondent argues that I should not consider the merits of this claim because Rhodes did not "fairly present" it to the Wisconsin Court of Appeals. Fair presentment requires the petitioner to have presented both the operative facts and the legal principles that control the claim to the state judiciary before seeking relief in federal court. *See, e.g., Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in

15

Case 2:13-cv-00161-LA   Filed 04/21/16   Page 15 of 20   Document 46

16. Moreover, a few days earlier, during the initial hearing on Rhodes's motion to proceed *pro se*, the trial court warned Rhodes about the practical consequences of not knowing the rules of evidence as part of a broader statement to Rhodes about the disadvantages of self-representation. *See* ECF No. 16-1 at 18–19. Specifically, the court advised Rhodes that he was "not schooled in the rules of evidence" and therefore did not know "how to present evidence, how to ask questions, how to cross examine witnesses." *Id.* at 18. Thus, there is no merit to Rhodes's claim that the trial court failed to advise him of the practical consequences of not knowing the rules of evidence, including that they established the ground rules for conducting the trial.

For these reasons, Rhodes is not entitled to relief on his claim that he did not voluntarily, knowingly, and intelligently waive his Sixth Amendment right to counsel at trial.

### B. Jail-Access Claim

Rhodes's remaining argument is that he was deprived of his Sixth Amendment right to counsel when the jail denied him "contact" visits with Kovac during the weekend before the trial commenced and instead limited him to brief teleconference visits.

The respondent argues that I should not consider the merits of this claim because Rhodes did not "fairly present" it to the Wisconsin Court of Appeals. Fair presentment requires the petitioner to have presented both the operative facts and the legal principles that control the claim to the state judiciary before seeking relief in federal court. *See, e.g., Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in

a timely manner leads to a default of the claim, thus barring the federal court from reviewing the claim's merits. *Id.*

Here, I conclude that Rhodes fairly presented to the Wisconsin Court of Appeals the claim that he was deprived of his Sixth Amendment right to counsel when the jail restricted his access to Kovac during the weekend prior to trial. The operative facts underlying the claim were fully described in the brief that Rhodes's appellate counsel filed with the court. *See* ECF No. 6-4 at 13, 15–16 & 19. Moreover, the brief contained a section entitled "The Milwaukee County Sheriff's refusal to allow Attorney Kovac to visit Mr. Rhodes in a manner necessary to effectively provide for the effective assistance of counsel constituted a denial of Mr. Rhodes' constitutional right to counsel." *Id.* at 30. That section of the brief cited *Geders v. United States*, 425 U.S. 80 (1976), which, as discussed below, is the case on which Rhodes's Sixth Amendment claim is primarily based. Thus, Rhodes has satisfied the fair-presentment requirement with respect to that claim.[3] Moreover, the Wisconsin Court of Appeals rendered a decision on the merits of this claim when it discussed the cases Rhodes cited and found them "inapposite." *See State v. Rhodes*, 337 Wis. 2d at 616. Therefore, the standard of review in 28 U.S.C. § 2254(d) applies.[4]

---

[3] In his briefs in this court, Rhodes cites cases recognizing that the Fourteenth Amendment guarantees a prison inmate the right to meaningful access to the courts. *See* Supp. Br. at 14, 16 (citing *Bounds v. Smith*, 430 U.S. 817 (1977) and *Johnson v. Avery*, 393 U.S. 483 (1969)). Rhodes did not cite these cases in the brief he filed in the Wisconsin Court of Appeals, and he did not otherwise fairly present to that court a claim for denial of his right of access to the courts. Thus, to the extent that Rhodes intends to seek habeas relief on the ground that the jail's restricting his access to Kovac violated his right of access to the courts, I may not consider the merits of that claim.

[4] In addition to finding Rhodes's cases inapposite, the court of appeals noted that Rhodes had devoted only two paragraphs of his brief to the jail-access claim. *State v.*

16

Turning to the merits, Rhodes argues that the Supreme Court has clearly established that the Sixth Amendment right to counsel includes the right of an incarcerated defendant to meet with his counsel in jail to prepare for trial. In support of this argument, he cites *Geders v. United States*, 425 U.S. 80 (1976), in which the Supreme Court held that a trial court's order preventing a criminal defendant from consulting with his trial counsel "about anything" during a 17-hour overnight trial recess impinged upon his Sixth Amendment right to counsel. However, in *Geders*, the defendant was barred from consulting with the attorney that was representing him during the trial, while in this case Rhodes had waived his right to counsel and was not being represented by Kovac at trial. So although *Geders* may have clearly established that the Sixth Amendment protects a defendant's right to meet with his trial counsel in preparation for trial, it does not clearly establish that a defendant who has *waived* his Sixth Amendment right to counsel retains a Sixth Amendment right to meet with an attorney. *Geders* is also distinguishable because in that case it was the trial court that prohibited the defendant from meeting with counsel, while in this case the trial court did

---

*Rhodes*, 337 Wis. 2d at 617. The court then deemed certain of the state's points conceded and stated that it would consider the claim no further on the ground that it had been insufficiently briefed. *Id.* The respondent contends that the court of appeals rested its disposition of this claim on an independent and adequate state procedural ground, i.e., on the rule that the court will not consider an argument that has been insufficiently briefed. *See Smith*, 598 F.3d at 382 (noting that a federal court may not review a claim which was fairly presented to the state courts but which was rejected on an independent and adequate state ground). However, the court's disposition of this claim, although based in part on the rule about insufficient briefing, was also interwoven with the merits, in that the court discussed *Geders* and deemed the case inapposite. Thus, the state did not rest its decision on a ground that was "independent" of the federal question. *See Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002) (noting that state procedural ground is not "independent" where petitioner fairly presents federal claim to state court and state court's reliance on state procedural ground is "interwoven with" the merits).

not know that the jail had restricted Rhodes's access to Kovac and, upon learning that it had, quickly took steps to restore full access. Thus, the Wisconsin Court of Appeals did not render a decision that was "contrary to" *Geders*. *See* 28 U.S.C. § 2254(d)(1).

Moreover, I cannot say that the court of appeals unreasonably applied *Geders* by refusing to extend its holding to a case in which a criminal defendant who had validly waived his right to trial counsel was denied unrestricted access to an attorney for two days. *See, e.g.*, *Long v. Butler*, 809 F.3d 299, 312 (7th Cir. 2015) (recognizing that state court unreasonably applies clearly established law when it refuses to extend Supreme Court rule to a case in which it should be applied). Rhodes cites *Johnson v. Avery*, 393 U.S. 483 (1969), in which the Supreme Court held that a prisoner has a right to consult with a "jailhouse lawyer"—i.e., a fellow inmate who has some knowledge of the law—when preparing a petition for a writ of habeas corpus. He argues that if a prisoner has a right to consult with a jailhouse lawyer when preparing a habeas petition, then he must also have a right to consult with a retained attorney while he is awaiting trial on criminal charges, even if he has waived his right to counsel at trial. However, *Avery* did not hold that the right to consult with a jailhouse lawyer is grounded in the Sixth Amendment. To the contrary, *Avery* recognized that access to jailhouse lawyers was important precisely because the Sixth Amendment right to counsel does not apply in federal habeas proceedings. *Id.* at 488. A defendant who is awaiting trial on criminal charges obviously has a right to counsel, and the issue here is whether a defendant who has validly waived that right nonetheless retains a Sixth Amendment right to unrestricted access, while in jail, to a lawyer who intends to provide the defendant with

18

legal advice but not serve as his trial counsel. *Avery* contains no reasoning that is instructive on that issue.

Rhodes has cited no case from any court that contains reasoning suggesting that a defendant who has waived his right to counsel at trial nonetheless retains a Sixth Amendment right to unrestricted access to a lawyer who has agreed to advise the defendant on how to represent himself *pro se*. Even if the right to counsel guarantees such a defendant a right to unrestricted access to advisory counsel, Rhodes has not shown that this right is clearly violated where the trial court was not responsible for the jail's restriction and, upon being advised of the restriction, quickly ordered it removed. Thus, I cannot say that the Wisconsin Court of Appeals unreasonably applied clearly established Supreme Court law when it refused to extend the holding of *Geders* to the facts of this case.

My conclusion that the Wisconsin Court of Appeals did not render a decision that was contrary to, or that involved an unreasonable application of, clearly established Supreme Court law should not be understood as implying that a criminal defendant who has elected to represent himself at trial does not, while in jail, have a right to meet face-to-face, in private, and for extended periods with an attorney who has agreed to assist him with the self-representation. Perhaps such a right should be recognized, either as an aspect of the accused's right to counsel or as an aspect of some other right, such as a prisoner's right of access to the courts or the accused's right to represent himself, *see Faretta v. California*, 422 U.S. 806 (1975). But the Supreme Court has not yet recognized this right or held that it is violated when a jail, without consulting the trial court, restricts the *pro se* defendant's access to retained advisory counsel for two days

before trial. Because the Wisconsin Court of Appeals did not unreasonably reject Rhodes's invitation to extend clearly established Supreme Court law, Rhodes is not entitled to habeas relief on this claim.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge